IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> JESUS ZARAGOZA ) <br> ) <br>       Petitioner, ) <br> ) <br>       v. ) <br> ) <br> TERRY WILLIAMS, Warden, ) <br> Stateville Correctional Center, ) <br> ) <br>       Respondent. ) | No. 11 C 4561 <br><br> Judge Joan H. Lefkow |

## **OPINION AND ORDER**

      Petitioner Jesus Zaragoza is presently in the custody of Terry Williams, Warden of the Stateville Correctional Center in Joliet, Illinois.[1] Following a 2004 jury trial in the Circuit Court of Cook County, Illinois, Zaragoza was convicted of first degree murder, aggravated discharge of a firearm, and two counts of aggravated battery with a firearm. *See* Rule 23 Order, *People* v. *Zaragoza*, No.1-04-3551, at 1 (Ill. App. 2007) (Resp. Exhibit A)[2] (Dkt. 15-1). The trial court sentenced him to fifty years of imprisonment for first degree murder, twenty years of imprisonment for each count of aggravated battery to run consecutively with the sentence imposed on his murder conviction, and fifteen years of imprisonment for aggravated discharge of a firearm, to run concurrently with his sentences for aggravated battery. *Id.*

---

[1]    Terry Williams was appointed warden of Stateville Correctional Center after the petition became fully briefed. He has been substituted as respondent for Marcus Hardy. *See* Dkt. 22. Zaragoza's prison identification number is B34049.

[2]    Respondent has filed the relevant court documents from the underlying criminal case as exhibits to its response to the petition. They will be cited where official citations are not readily accessible.

Respondent concedes that the petition is timely and that no claim is barred by non-retroactivity or failure to exhaust available state court remedies. As such, the court will not set out the procedural history of the case but proceeds to the merits of Zaragoza's claims.

The petition raises the following claims:

Claim 1: the trial court erred in suppressing Zaragoza's videotaped confession because it was coerced and involuntary;

Claim 2: the trial court erred in failing to grant a mistrial when the State failed to disclose an oral statement made by Zaragoza to Emmanuel Martinez but then introduced it at trial;

Claim 3: trial court abused its discretion in sentencing Zaragoza; and

Claim 4: trial counsel was ineffective for failing to secure a Spanish translator during his trial.

## LEGAL STANDARDS

Quoting from *O'Neal* v. *McAninch*, 513 U.S. 432, 442, 115 S. Ct. 992, 997 (1995), Zaragoza correctly recites the high principle of "The Great Writ" of habeas corpus: "a remedy whose most basic traditions and purposes are to avoid a grievous wrong—holding a person in custody in violation of the Constitution. . . of the United States--and thereby both [to] protect [ ] individuals from unconstitutional convictions and to help [ ] guarantee the integrity of the criminal process by assuring that trials are fundamentally fair." Memorandum in Support of Petition at 11 (Dkt. 4) (citations, internal quotation marks and ellipses omitted).

This court's review of a state court conviction, however, is limited. The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), requires this court to deny any petition for a writ of habeas corpus with respect to any claim adjudicated on the merits in the state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." *See Price* v. *Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]," or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams* v. *Taylor*, 529 U.S. 362, 405-407, 120 S.Ct. 1495, 146 L. Ed. 2d 389 (2000). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case.") (internal citations omitted).

Moreover, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore* v. *Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman* v. *Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Anderson* v. *Cowen*, 227 F.3d 893, 899 (7th Cir. 2000).

**I.	Whether the Illinois courts violated petitioner's constitutional rights in denying a motion to suppress Zaragoza's videotaped confession because it was coerced and involuntary.**

Zaragoza contends that his due process, equal protection, and fifth and sixth amendment rights were violated when the trial court denied his motion to suppress his confession as involuntarily given.  According to Zaragoza, his confession was the result of police coercion.  To determine whether a defendant's will was overborne in a particular case, the Court is to "assess[] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation."  *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973).  "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."  *Colorado v. Connelly,* 479 U.S. 157, 167 (1986).  "The Seventh Circuit has identified a number of factors relevant to this inquiry, including the nature and duration of the questioning, whether the defendant was prevented from eating or sleeping, and whether the defendant was under the influence of drugs or alcohol.  Courts also consider "the defendant's age, intelligence, education, and experience with the criminal justice system."  *United States* v. *Terrell*, 2014 WL 5423067, *3 (N.D.Ill.) quoting *Watson v. Detella,* 122 F.3d 450, 453 (7th Cir. 1997) (internal citation and quotation marks omitted.)

Zaragoza testified at a hearing on his motion to suppress his confession.  Transcript of Proceedings, July 15, 2003, Case No. 02 CR 23905 (Cir. Ct. Cook Co.), Resp. Exhibit W (Dkt. 15-22, page ID 980-999).  He testified that he was 21 years old at the time of the shooting.  He had dropped of high school in his junior year.  He had been arrested before for possession of a controlled substance but he had never been interrogated by police.  On August 17, 2002, he was arrested and brought in for questioning at about 10 p.m.  Once he was taken to the police station,

he was placed in a small room ("like 6x6") with no windows. *Id.* at 981. The room contained a chair. He was not handcuffed. Detective Thomas Mitchell came into the room and told him he was wanted for a murder in Arizona. Zaragoza denied having ever been in Arizona. Mitchell left the room. Sometime later, Mitchell returned and asked Zaragoza if he had told the truth before and questioned him about his whereabouts on the day of the shooting. Zaragoza responded that he had been at a party with his family. Later, on August 18, Detective Lopez came to speak with Zaragoza. Lopez was alone, and he spoke to Zaragoza in Spanish, questioning him concerning the shooting. Lopez placed handcuffs on him. Zaragoza maintained his position that he had been at a party with his family. Lopez responded by punching him in the center of his chest, "knocking the wind" out of him. Lopez resumed the questioning and about five minutes later punched Zaragoza again. Lopez left the room and returned sometime later, early in the morning of August 19, resuming the same line of questions about the shooting. Zaragoza remained in handcuffs. Lopez showed Zaragoza a photo of a car, stating it was used in the shooting and had Zaragoza's fingerprints on it. Zaragoza responded that he then told Lopez he would tell the truth and gave a confession. From the time he was arrested until he gave his confession, Zaragoza was given three Pepsi Colas and 3 cigarettes and had not slept. He was not given food at any time. He was allowed to use the bathroom three or four times. On cross-examination, Zaragoza testified that he had been arrested at about 10:00 p.m. on August 17 and that no one came into the room until morning, when Detective Mitchell arrived. *Id*. at 999-1013. Mitchell remained in the room only a couple of minutes on two occasions. Both times, Mitchell asked Zaragoza if he needed anything and let him go to the bathroom. He was reminded that another Hispanic detective, Garcia, came into the room with Detective Lopez. He admitted he was read his *Miranda* rights. He maintained that Garcia left after about 15 minutes,

leaving him alone with Lopez.   This was when he was struck.   Lopez put him in handcuffs locked to the wall after this occurred.   He was reminded that the second time Lopez came into the room another detective (Hennigan) was with him.   He conceded that Lopez, after showing him the photo of the car, reported that his friends Balthezar and Chino "were talking," and Zaragoza began to admit his part in the shooting.   He was not handcuffed while Hennigan and Lopez were together in the room.   He conceded that he was interviewed by an Assistant State's Attorney, who also read him his rights and that he confessed because he wanted to tell the truth.   During his videotaped confession, Zaragoza denied any mistreatment by the police and admitted that he had been given food and drink.

   Detective Jose Lopez testified that he interviewed Zaragoza at approximately 5:30 p.m. on August 18, along with Detective Adrian Garcia and that Zaragoza, after being advised of his rights, agreed to talk with him about the shooting.   Transcript of Proceedings on June 26, 2003, Case No. 02 CR 23905 (Cir. Ct. Cook Co.), Resp. Exhibit V (Dkt. 15-21, Page ID 870 – 920).   Zaragoza denied his involvement.   Lopez denied that Zaragoza was threatened or struck during the conversation.   Lopez spoke to Zaragoza a second time around 7:00 p.m., and again he denied involvement.   After examining a vehicle that had been identified at the scene, at about 2:30 a.m. on August 19, Lopez and Detective Hennigan went back to see Zaragoza.   At that time, they told him other witnesses had implicated him in the crime and they had located the car they believed had been used in the homicide.   He again denied having struck or threatened Zaragoza and testified that they brought him food and drink.   The conversation lasted about 30 minutes.   At about 3:00 a.m., Hennigan notified the State's Attorney's Office.   An Assistant State's Attorney interviewed Zaragoza at approximately 10:30 a.m. while Lopez was present.   On cross examination, Lopez

conceded that Zaragoza had been locked in the interview room from 10:00 p.m. on August 17 until 2:30 a.m. on August 19, without any place to sleep except on the floor.

Assistant State's Attorney James V. Murphy, III, testified that he met with the detectives at approximately 5:30 a.m. on August 19, did further investigation of the case, and met with Zaragoza at approximately 10:30 a.m. *Id.* at 921- 958. During the interview of Zaragoza, Lopez was present. Zaragoza did not appear to be fatigued, understood the questions Murphy asked him, was alert, polite, and assertive. In a second conversation that day, Zaragoza elected to make a videotaped (as opposed to a written) statement. Murphy went through a series of forms with Zaragoza in which Zaragoza stated that he had been treated fine in the police station, had had food and drink, had been able to use the bathroom, had had some sleep, and was not under the influence of drugs or alcohol. He also stated that no threats or promises had been made to him by the police. Zaragoza never stated to Murphy that Lopez had struck him three times with a closed fist, and he did not say he been having difficulty breathing,

Detective Mitchell testified that he checked on Zaragoza after he arrived on his shift at 8:30 a.m. on August 18. *Id*. at 963-979. He found Zaragoza asleep in the chair. Mitchell woke him up. He escorted him to the bathroom and asked if he were hungry. Mitchell went to a nearby McDonald's and bought a breakfast sandwich, which he delivered to Zaragoza about 10:00 a.m. Mitchell checked on Zaragoza again about 1:30 in the afternoon. He took Zaragoza a sandwich and escorted him to the bathroom again.

The presiding judge announced his decision on the record, concluding "Based upon all the evidence that I heard, in assessing the credibility of all the witnesses that did testify, I don't believe that Mr. Zaragoza's statement was a product of any physical coercion. Further, I find that his

statement was given after a knowing and voluntary waiver of his Miranda rights." Resp. Exhibit W at 1033 (Dkt. 15-22). The appellate court reviewed the evidence elicited at the hearing and ruled, "Viewing the totality of the evidence, we cannot say that the trial court's conclusions in this regard are manifestly erroneous. Therefore, we reject the defendant's claim that the trial court erred in denying his motion to suppress the videotaped confession." Resp. Exhibit A at 9 (Dkt. 15-1).

This court has, likewise, reviewed the testimony given at the hearing and concludes that the state court proceedings did not result in a decision that was based on an unreasonable determination of the facts in light of all of the evidence. The appellate court properly conducted *de novo* review of the trial court's ruling. *See Ornelas* v. *United States*, 517 U.S. 690, 699, 116 S. Ct. 1657 (1996) ("We [ ] hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."). Even if Detective Lopez struck Zaragoza, as he asserts, the period between the arrest and the meeting with ASA Murphy was approximately 36 hours. There was a break of several hours between the confession to the police and that meeting. Zaragoza did not indicate to ASA Murphy that he had been mistreated and admitted that he had been allowed to use the bathroom and had been fed. Zaragoza conceded that he was given *Miranda* warnings, but there is no evidence that he sought to stop the interrogation or asked for a lawyer's assistance. The Appellate Court was entitled to give deference to the trial court's findings of fact and give due weight to the inferences it drew from those facts. *See id.*

Neither did the state court proceedings result in an unreasonable application of clearly established Federal law. The facts do not support a conclusion that police misconduct overbore Zaragoza's will causing him to confess.

For these reasons, this claim is denied.

**2. Whether the Illinois courts violated *Brady* v. *Maryland* in failing to grant a new trial where the State failed to disclose an oral statement made by Zaragoza to witness Emmanuel Martinez who disclosed the statement at trial.**

During Zaragoza's trial, the State called Emmanuel Martinez, an associate of Zaragoza's, as a witness. Transcript of Proceedings, September 8, 2004, Case No. 02 CR 23905 (Cir. Ct. Cook Co.), Resp. Exhibit Y (Dkt. 15-24, page ID Z-88-94). During the course of his testimony Martinez reported that he saw Zaragoza at a party in the early morning hours of August 11, 2002. In speaking to them Zaragoza admitted that he and an associate had killed a member of a rival gang and warned them that anyone that discussed it would be killed.

Zaragoza argues that Martinez's statements should have been disclosed prior to the trial according to Illinois law. Zaragoza contends that the trial court's denial of a motion for mistrial was error under Illinois law. Zaragoza does not identify a principle of federal constitutional law on which he relies. As such, this court has no basis to entertain this claim other than to ensure that a *pro se* litigant's claims are read liberally to ensure that a constitutional claim is not present but inarticulately expressed. *See Erickson v. Pardus*, 551 U.S. 89, 94 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).

Respondent correctly argues in the first instance that Zaragoza's claim is procedurally defaulted because he did not present it to all levels of the Illinois courts. *See O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). "Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review,

either on direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory."). *Lewis* v. *Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004). Moreover, errors arising solely from state law are not cognizable on federal habeas review. *Dellinger* v. *Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citing *Estelle* v. *McGuire*, 502 U.S. 62, 67-68 (1991). To avoid default, petitioner "must, in some manner, alert the state courts to the federal underpinnings of his claim." *Perruquet* v. *Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Appellant's brief on appeal does not cite federal constitutional law as a basis for his argument. Resp. Exhibit B (Dkt. 15-2). On direct appeal, the court rejected the argument for several reasons based on Illinois law including, importantly, that the prosecutor had not heard the inculpatory statement before the witness testified; thus there was no willfulness involved. Further, the witness had been disclosed during discovery as having stated that Zaragoza told him and others to "stay quiet." Finally, in light of all of the evidence, including Zaragoza's confession and the absence of surprise at the witness's testimony linking Zaragoza to the shooting, the court ruled there was no prejudice justifying a new trial. Resp. Exhibit A at 12-15 (Dkt. 15-1).

Likewise, Zaragoza did not raise a federal constitutional claim regarding the statement in his post-conviction petition. Rather he relied on Illinois law and procedure. Resp. Exhibit F (Dkt. 15-6). This claim is therefore procedurally defaulted.

Zaragoza makes no effort to show cause or prejudice for the default. Moreover, the record does not reflect that a federal constitutional violation occurred. The closest possibility is the rule of *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which held that the

government must disclose evidence favorable to the defense where the evidence is material to either the guilt or punishment of the defendant." *Ienco* v. *Angarone*, 291 F.Supp.2d 755, 759-760 (N.D.Ill. 2003) (citing *Brady,* 373 U.S. at 87; *United States v. Tadros,* 310 F.3d 999, 1005 (7th Cir. 2002).) As *Ienco* reiterates, "A *Brady* violation occurs when the government withholds evidence that, had it been disclosed, creates a reasonable probability that the result of the trial would have been different. Thus, [a defendant] must show that: (1) the government suppressed evidence; (2) the evidence was favorable to the defense, either because it was exculpatory or had impeachment value; and (3) the evidence was material to an issue at trial. [internal citations omitted]; see *also Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (holding that suppression of impeachment evidence can give rise to a *Brady* violation)." In short, Martinez's statement was not exculpatory and there is no apparent basis to suggest it was useful impeachment material. There no basis for a constitutional claim.

Accordingly, this claim is denied.

**3.     Whether the sentence imposed violated the Eighth Amendment prohibition against cruel and unusual punishment.**

Broadly read, Zaragoza contends that the total of seventy years of imprisonment imposed by the Illinois courts constitutes cruel and unusual punishment in violation of the eighth amendment. Federal courts generally will not review a state court sentence that falls within the statutory limit. *See Henry* v. *Page*, 223 F.3d 477, 482 (7th Cir. 2000); *Gleason* v. *Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994). Although the eighth amendment requires "some degree of sentencing proportionality" in non-capital felony convictions, a particular offense that falls within legislatively-prescribed limits will not be considered disproportionate unless the sentencing judge

has abused his discretion. *Henry,* 223 F.3d at 482. Zaragoza has cited no Supreme Court precedent or other federal appellate authority indicating that a sentence of 50 years for first degree murder, 20 years for each count of aggravated battery, and 15 years for aggravated discharge of a firearm to run concurrently with the aggravated battery counts is so disproportionate to the seriousness of the offense that it amounts to cruel and unusual punishment. Indeed, first degree murder was until recently a capital offense in Illinois and remains so in many jurisdictions. The Supreme Court has not ruled capital punishment cruel and unusual, so a lengthy term of imprisonment is not arguably so. Accordingly, this claim is denied.

**4. Whether trial counsel was ineffective for failing to secure a Spanish translator because it was necessary in order for him to understand the proceedings.**

Zaragoza contends that trial counsel's failure to secure a Spanish language interpreter constituted ineffective assistance of counsel and violated his right to due process of law. As reiterated in *Mendoza* v. *United States*, 755 F.3d 821, 827-28 (7th Cir. 2014),

> A criminal defendant is denied due process when he is unable to understand the proceedings due to a language difficulty. And a criminal defendant has a due process right to communicate with counsel. Therefore, a criminal defendant lacking a basic understanding of the English language has a due process right to an interpreter to enable him to understand what is said at trial and to communicate with counsel. But a defendant does not have a due process right to have an interpreter continuously seated at the defense table.

(Internal citations omitted).

For claims of ineffective assistance of counsel, the standard set forth in *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), governs whether counsel's performance is constitutionally effective. *See Harrington* v. *Richter*, — U.S. —, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011). Under *Strickland*, the court must consider (1) whether counsel's representation fell below an objective standard of reasonableness; and (2) whether there is a

reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88. This standard is viewed through the lens of § 2254(d)(1)'s "contrary to" or "an unreasonable application of" provisions: "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. A habeas petitioner "must do more than show he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance . . . . [H]e must show that the [reviewing court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Emerson* v. *Shaw*, 575 F.3d 680, 685 (7th Cir. 2009) (alterations in original) (quoting *Bell* v. *Cone*, 535 U.S. 685, 698–99, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)).

The Illinois Appellate Court on habeas review stated the following reasons for denial of the claim:

> Although defendant acknowledges that he made a statement to the police in English and was able to answer, in English, the court's questions, he argues he was denied a fair trial when counsel, who knew the level of his English proficiency, failed to request an interpreter at trial. The State, on [the] other hand, argues defendant's petition was properly dismissed when the record, which reveals that defendant spoke English during his videotaped statement, pretrial testimony, and conversations with the court, affirmatively rebuts his allegation. We agree. Here, the record reveals not only that defendant gave a videotaped statement to the police in English, but that he also spoke English while engaging in numerous conversations with the court and testifying at the pretrial hearing. At no point during his testimony, not even during cross-examination, did defendant request an interpreter. Additionally, at sentencing, when the trial court inquired whether defendant wished to say anything, defendant answered, in English, in the negative. When, as here, the trial record contradicts a defendant's postconviction allegations (*see Jefferson*, 345 Ill.App.3d at 376), summary dismissal is proper. (Dkt. 14 at 29).

The court concluded that Zaragoza's factual allegations in his petition were "positively rebutted by the record, and "indisputably meritless." *Id*.

Zaragoza contends that he "undisputedly asserted" to his attorney and to the court that he did not understand the Court proceedings. Memorandum in Support of Petition at 61 (Dkt. 4). He submitted an affidavit (without attestation because he was in custody) to that effect and provided a document from a Chicago public high school reflecting that during his attendance during 1996-98 Zaragoza's proficiency in English was "fairly low." *Id.* at 62. Zaragoza contends that the documents were rejected because they were not notarized. *Id.* at 63. Even had the court considered the documents, it is not likely they could have persuaded the court otherwise in light of the abundance of evidence that Zaragoza was able to understand and communicate in English.

The appellate court reviewed the record *de novo*, accurately concluding that it reflects that Zaragoza communicated ably in English with the police, the prosecutor, and on the witness stand. Zaragoza does not identify any testimony or issue that he did not understand that would have been material to his conviction. Therefore, it was reasonable for his counsel to decide that an interpreter was not necessary. Certainly, the decision was within the range of reasonableness defined in *Strickland.* This claim is denied.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2),

> (1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate

may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal.

*Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003) (internal citations omitted).

For the reasons stated above, the court finds that there can be no showing of a substantial constitutional question for appeal, as reasonable jurists would not find this court's ruling debatable. *Lavin* v. *Rednour*, 641 F.3d 830, 832 (7th Cir. 2011) (citing *Slack* v. *McDaniel*, 529 U.S. 473, 484–85, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) and *Davis,* 349 F.3d at 1029). Accordingly, the court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Zaragoza's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

Date: January 9, 2015

_____
U.S. District Judge Joan H. Lefkow